UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

JASON CURNEN,

     **Petitioner,**

  - against -

BRUCE S. YELICH,
**Superintendent of the Bare Hill
Correctional Facility,**

    **Respondent.**

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10|19|15

**OPINION AND ORDER**

**11-cv-07499 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

   Petitioner Jason Curnen brings this pro se habeas corpus petition

pursuant to section 2254 of Title 28 of the United States Code. Curnen challenges

his state court conviction following a jury trial in New York County Court, Putnam

County.[1] After being convicted of Assault in the Second Degree,[2] Curnen was

---

   [1] *See* Petition for a Writ of Habeas Corpus ("Pet.") at 1; Memorandum
of Law in Opposition to the Petition for Writ of Habeas Corpus ("Opp. Mem.") at
5.

   [2] *See* New York Penal Law ("NYPL") § 120.05[2].

-1-

sentenced to four years in prison followed by three years of post-release

supervision and restitution of $7,604.44 to cover the victim's medical expenses.[3]

Curnen filed the instant petition on October 21, 2011, challenging his

conviction on the grounds that: (1) he was deprived of his constitutional right to a

speedy trial; (2) he was denied the right of effective assistance of counsel; (3) the

prosecutors conducted a vindictive prosecution; and (4) the prosecutors are guilty

of prosecutorial misconduct and criminal acts.  For the following reasons, the

Petition is DENIED.

## II.   BACKGROUND

### A.   The Offending Conduct

The crime underlying Curnen's conviction occurred on May 3, 2007

in the town of Patterson, Putnam County.[4]  At the time, Curnen resided in an

apartment at 101 Haviland Drive, next door to Anthony Cataldo, who resided at

105 Haviland Drive.[5]  At approximately 6:00 p.m., Cataldo arrived at his apartment

and parked his car in front of the building adjacent to his apartment.[6]  Shortly after

---

[3]     *See* Opp. Mem. at 5, 20.

[4]     *See id.* at 6.

[5]     *See id.*

[6]     *See id.* at 6-7.

entering his apartment, Cataldo heard Curnen knocking loudly on Cataldo's apartment door, screaming about the location of Cataldo's vehicle.[7]  Cataldo went outside to move his car, but Curnen struck him as he approached his vehicle.[8] Cataldo fell to the ground, and Curnen continued to punch and kick him, pinning him to the ground so he could not get up.[9]  Police eventually arrived on the scene and arrested Curnen.[10]

### B.   Procedural History

On May 3, 2007, Curnen was charged with third degree assault, a misdemeanor.[11]  He was arraigned in the Patterson Justice Court and released on his own recognizance on the same date.[12]  Curnen first appeared with counsel on July 26, 2007, after which the parties agreed to several adjournments in order to submit pre-trial motions and await decisions on the motions.[13]  Curnen was

---

[7]     *See id.* at 7.

[8]     *See id.*

[9]     *See id.*

[10]    *See id.*

[11]    *See id. See also* NYPL § 120.00[1].

[12]    *See* Opp. Mem. at 7.

[13]    *See id.* at 8-9.

represented by counsel throughout the pendency of his pre-trial motions.[14]

Curnen requested a trial by jury on April 17, 2008, and prosecutors submitted an indictment to a grand jury on October 24, 2008.[15]  The indictment charged Curnen with six counts, including the charge on which Curnen was ultimately convicted, felony assault in the second degree.[16]  The People declared their readiness for trial on November 12, 2008.[17]  Following a jury trial, Curnen was convicted on May 8, 2009.[18]

Curnen appealed his conviction and sentence to the Appellate Division, Second Department, alleging that the trial court erred in: (1) failing to dismiss a juror; (2) failing to grant Curnen's motion to dismiss for legal insufficiency of the evidence; and (3) imposing a harsh and excessive sentence.[19] On November 9, 2010, the Appellate Division unanimously affirmed Curnen's

---

[14]     *See id.* at 8-9.  Curnen's initial counsel asked to be relieved on January 17, 2008.  The Patterson Justice Court granted the application and appointed another counsel on the same date. *See id.* at 8.

[15]     *See id.* at 9.

[16]     *See* 11/12/08 Statement of Readiness, Ex. 8 to Pet.

[17]     *See id.*

[18]     *See* Opp. Mem. at 9-20.

[19]     *See id.*

conviction and sentence.[20]  Through counsel, Curnen submitted a letter to the New

York Court of Appeals on December 22, 2010 requesting leave to appeal the

judgment of the Appellate Division.[21]  The Court of Appeals denied leave on

March 3, 2011.[22]

Separately, Curnen moved to vacate the judgment pursuant to section

440.10 of the New York Criminal Procedure Law ("CPL") by *pro se* motion on

October 19, 2010.[23]  Curnen argued that his conviction was obtained in violation of

his right to a speedy trial under section 30.30 of the CPL.[24]  Although the thrust of

Curnen's motion to vacate centered on his statutory right to a speedy trial, Curnen

also claimed that the prosecutors' "blatant refusal to grant [his] repeated request for

a jury trial, . . . [resulting in] excessive delay in the form of multiple and

unnecessary adjournments" amounted to "vindictive prosecution" and "improper

conduct . . . [that] completely overstepped the boundaries of acceptable practice."[25]

---

[20]    *See id.* at 20-21.

[21]    *See* 11/22/10 Letter, Ex. H to 12/27/12 Mary J. MacCrae Declaration
in Opposition to the Petition for a Writ of Habeas Corpus ("MacCrae Decl.").

[22]    *See* 3/3/11 Certificate Denying Leave, Ex. J to MacCrae Decl.

[23]    *See* Opp. Mem. at 21.

[24]    *See id.*

[25]    10/19/10 Motion to Vacate Judgment ("Motion to Vacate"), Ex. D to
MacCrae Decl., ¶¶ 14-15.

The trial court denied Curnen's motion on January 4, 2011, finding that Curnen waived his statutory speedy trial claim by failing to raise the issue prior to the commencement of trial, as required by New York law.[26]  The decision did not address vindictive prosecution or prosecutorial misconduct.[27]

On January 26, 2011, Curnen applied for a certificate granting leave to appeal the trial court decision to the Appellate Division, Second Department.[28]  In his application, Curnen for the first time raised the issue of ineffective assistance of counsel, arguing that the failure of his appointed counsel to raise a statutory speedy trial claim prior to the commencement of his trial amounted to "inadequate legal assistance [that] warrants appellate intervention in the interest of justice."[29]  Curnen also raised the issues of vindictive prosecution and prosecutorial misconduct.[30] The Appellate Division denied leave on May 4, 2011.[31]

---

[26]     *See* 1/4/11 Decision and Order, Ex. G to MacCrae Decl., at 2.

[27]     *See id.*

[28]     *See* 1/26/11 Application for Certificate Granting Leave to Appeal, Ex. K to MacCrae Decl.

[29]     *See id.* ¶ 2.

[30]     *See id.*

[31]     *See* Opp. Mem. at 22.  Curnen also sought leave to appeal to the New York Court of Appeals, but the Court of Appeals noted that "the order sought to be appealed from is not appealable under CPL 450.90(1)." 6/15/11 Order Dismissing Leave, Ex. M to MacRae Decl.

## III.   LEGAL STANDARDS

### A.    Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court may not grant a writ of habeas corpus to a prisoner in custody pursuant to the judgment of a state court with respect to any claim, unless the state court's adjudication on the merits of the claim: "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;"[32] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[33]

A state-court decision is contrary to clearly established federal law, as determined by the Supreme Court, in the following two instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[34]

---

[32]    28 U.S.C. § 2254(d)(1).

[33]    *Id.* § 2254(d)(2).

[34]    *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[35]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous.  Rather, "[t]he state court's application of clearly established law must be *objectively unreasonable*."[36]  This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable

---

[35]    *Id.* at 407.

[36]    *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

jurists.'"[37]  While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[38] Furthermore, section 2254(d) applies to a defendant's habeas petition even where the state court order does not include an explanation of its reasoning.[39]

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for [section] 2254(d) applies when a "claim," not a component of one, has been adjudicated.[40]

Section 2254(d) also applies where a state court does not explicitly state in its opinion that it is adjudicating a claim on the merits.[41]  "When a federal

---

[37]  *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[38]  *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[39]  *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[40]  *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311–12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." (quotation marks and citation omitted))).

[41]  *See id.*

claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[42]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations. Such determinations are presumed to be correct, and the petitioner must rebut them by clear and convincing evidence.[43]

## B.   Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[44]  In order to satisfy this exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[45] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[46]  Fair presentation of a

---

[42]   *Id.* at 99.

[43]   *See* 28 U.S.C. § 2254(e)(1).

[44]   *Id.* § 2254(b)(1)(A).

[45]   *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[46]   *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Dave v. Attorney Gen.*, 969 F.2d 186, 192 (2d Cir. 1982) (en

claim, for exhaustion purposes, includes petitioning for discretionary review in the state's highest appellate court.[47]  However, "a federal habeas court need not require that a claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."[48]  In such cases, a district court may deem the claims to be exhausted.[49]

When a habeas petition under the AEDPA contains both exhausted and unexhausted claims, a district court "can offer the petitioner 'the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims.'"[50]  A district court may also deny a petition on the merits, even if it contains unexhausted claims.[51]  The Supreme Court has noted that "plainly meritless" claims should be denied on the

_____

banc)).

[47]    *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999); *see also Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (stating that in New York, exhaustion requires that a "criminal defendant . . . first appeal his or her conviction to the Appellate Division, and then . . . seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal").

[48]    *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997).

[49]    *See id.*

[50]    *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

[51]    *See* 28 U.S.C. § 2254(b)(2).

merits rather than dismissed for failure to exhaust.[52]  Finally, in limited

circumstances, a district court may stay a mixed petition and hold it in abeyance

until it has been properly presented to the state courts.[53]

### C.    Procedural Bar

Under the adequate and independent state ground doctrine, if the last

state court to render judgment clearly and expressly states that its judgment rests

on a state procedural bar, federal habeas review is precluded.[54]  Even if the state

court alternatively rules on the merits of the federal claim, federal habeas review is

precluded if an adequate and independent state ground would bar the claim in state

court.[55]  Federal habeas review of procedurally barred claims is foreclosed unless

the prisoner can demonstrate either (1) "'cause for the default and actual

prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental

---

[52]    *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of the discretion to deny unexhausted claims on the merits, the decision to stay a habeas petition to allow a petitioner to exhaust plainly meritless claims would be an abuse of discretion).

[53]    *See id.* at 277–78.

[54]    *See Jones v. Duncan*, 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)).

[55]    *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 72–82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996).

miscarriage of justice.'"[56]  To show cause for a default, a prisoner must put forth some objective factor, external to the defense, explaining why the claim was not previously raised.[57]  The Supreme Court has provided little guidance as to what constitutes "prejudice," but it can be inferred that prejudice is shown when the claim, if proven, would bear on the petitioner's guilt or punishment.[58]  The fundamental miscarriage of justice exception to the procedural bar rule is available only upon a showing of actual innocence.[59]  Finally, a habeas petitioner may not avoid the exhaustion requirement by waiting until federal habeas review to bring claims properly raised in state court.  If such claims would be procedurally barred on the state level, they are deemed exhausted and procedurally defaulted for the

---

[56]     *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617–18 (2d Cir. 1994).

[57]     *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[58]     *See Banks v. Dretke*, 540 U.S. 668, 671 (2004) (stating that "prejudice within the compass of the 'cause and prejudice' requirement exists when suppressed evidence is 'material' for *Brady* purposes" (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999))).

[59]     *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

-13-

purposes of federal habeas review.[60]

### D.   Right to a Speedy Trial

In order to determine whether an individual has been denied the Sixth Amendment right to a speedy trial, the court addresses four factors: (1) "length of the delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant."[61]  Only a delay that is "presumptively prejudicial" to the defendant will provoke an inquiry into whether the defendant was denied the right to a speedy trial.[62]  "Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."[63]  Once a speedy trial analysis is triggered, no single factor is "either a necessary or a sufficient condition to the finding of a deprivation of the right to a speedy trial," and all factors "must be considered together with such other circumstances as may be relevant."[64]

---

[60]    *See Coleman*, 501 U.S. at 735 n.1; *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006).

[61]    *Barker v. Wingo*, 407 U.S. 514, 530 (1972) (citations omitted).

[62]    *Id.*

[63]    *Id.* at 530-31.

[64]    *Id.* at 533.

The Supreme Court has explained that "[w]hile each of the factors is relevant, '[t]he flag all litigants seek to capture is the second factor, the reason for delay.'"[65]  When assessing the reason for delay, "different weights should be assigned for different reasons."[66]  One critical component of the inquiry is "whether the government or the criminal defendant is more to blame for th[e] delay."[67]  "Deliberate delay 'to hamper the defense' weighs heavily against the prosecution."[68]  In contrast, "'[i]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine.'"[69]

Regarding the third factor, the Supreme Court has stated that a defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."[70]  However, a defendant's assertion of the right "must be viewed in light of [his]

---

[65]   *Boyer v. Louisiana*, 133 S. Ct. 1702, 1706 (2013) (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)).

[66]   *Barker*, 407 U.S. at 531.

[67]   *Doggett v. United States*, 505 U.S. 647, 651 (1992).

[68]   *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Barker*, 407 U.S. at 531).

[69]   *Id.* (quoting *Barker*, 407 U.S. at 529).

[70]   *Barker*, 407 U.S. at 531.

other conduct" and the surrounding circumstances.[71]  By itself, a finding that a particular defendant has "repeatedly moved for dismissal on speedy trial grounds" establishes neither "that [he has] appropriately asserted [his] rights" nor that he was deprived of the right to a speedy trial.[72]

Finally, the court assesses whether the defendant has been prejudiced by a delay in light of the following interests: (1) "to prevent oppressive pretrial incarceration," (2) "to minimize anxiety and concern of the accused," and (3) "to limit the possibility that the defense will be impaired."[73]  The most serious of these three interests is the possibility that the defense will be impaired by delay, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[74]

### E.   Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and (2) that he suffered

---

[71]     *Loud Hawk*, 474 U.S. at 314.

[72]     *Id.*

[73]     *Barker*, 407 U.S. at 532.

[74]     *Id.*

prejudice as a result of that representation.[75]  Both elements must be proven by the

petitioner to assert a valid claim.  When considering the first factor, a court must

apply a "strong presumption" that counsel's representation fell within the "wide

range" of reasonable professional assistance.[76]  "[S]trategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable."[77]

> "Even if a defendant shows that particular errors of counsel were

unreasonable, . . . the defendant must show that they actually had an adverse effect

on the defense."[78]  Thus, to establish prejudice

> [t]he [petitioner] must show that there is a reasonable probability
> that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different.  A reasonable probability
> is a probability sufficient to undermine confidence in the
> outcome.[79]

In other words, "[i]t is not enough 'to show that the errors had some conceivable

---

[75]    *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

[76]    *Id.* at 689.  *Accord Bell v. Cone*, 535 U.S. 685, 697-98 (2002).

[77]    *Strickland*, 466 U.S. at 690.  *Accord Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices.") (quoting *Strickland*, 466 U.S. at 690).

[78]    *Strickland*, 466 U.S. at 693.

[79]    *Id.* at 694.

effect on the outcome of the proceeding.'"[80]

Finally, the order of analysis of the two *Strickland* prongs – performance and prejudice – is at the discretion of the court.  As explained by the Supreme Court:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.[81]

Accordingly, if a court finds that there is no prejudice, it need not reach the performance prong.[82]

## F.   Vindictive Prosecution

The initial decision of whether to prosecute an individual "generally

---

[80]   *Harrington v. Richter*, 582 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693).

[81]   *Strickland*, 466 U.S. at 697.

[82]   *See Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

rests within the broad discretion of the prosecutor."[83]  Nonetheless, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."[84]  "[A] prosecution brought with a vindictive motive, 'penalizing those who choose to exercise constitutional rights, would be patently unconstitutional.'"[85]

       To succeed on a claim of vindictive prosecution, a petitioner must establish either "actual vindictiveness" or "a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action."[86] Actual vindictiveness requires proof that "the prosecutor's charging decision was a 'direct and unjustifiable penalty' that resulted 'solely from the defendant's exercise of a protected legal right.'"[87]  In other words, a petitioner must show that (1) "the

---

[83]    *United States v. White*, 972 F.2d 16, 18 (2d Cir. 1992).

[84]    *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (citation and quotation marks omitted).

[85]    *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir. 2000) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969)). *Accord Goodwin*, 457 U.S. at 372 ("[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.").

[86]    *Sanders*, 211 F.3d at 716. *Accord Goodwin*, 457 U.S. at 373, 384 n.19.

[87]    *Sanders*, 211 F.3d at 716-17 (quoting *Goodwin*, 457 U.S. at 380 n.11, 384 & n.19).

prosecutor harbored genuine animus" toward him and (2) "the [petitioner] would not have been prosecuted except for the animus."[88]

A presumption of prosecutorial vindictiveness requires proof that "the circumstances of a case pose a realistic likelihood of such vindictiveness."[89] The petitioner must show that the circumstances of the case "present a realistic likelihood of vindictiveness that would be 'applicable in all cases,' and any such presumption may be 'overcome by objective evidence justifying the prosecutor's action.'"[90]

Presumptions of vindictiveness typically do not arise in the pre-trial setting.[91] Indeed, just the opposite: as a general matter, "a prosecutor's pretrial charging decision is presumed legitimate."[92] In the context of plea negotiations, the Supreme Court has recognized that a prosecutor's threat to bring additional charges against a defendant who refuses to plead guilty is "an inevitable – and

---

[88]     *Id.* at 717 (citation and quotation marks omitted).

[89]     *Id.* (citations and quotation marks omitted).

[90]     *Id.* (quoting *Goodwin*, 457 U.S. at 376 n.8, 381).

[91]     *See Goodwin*, 457 U.S. at 381 ("[A] change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision."). *See also United States v. Koh*, 199 F.3d 632, 639-40 (2d Cir. 1999).

[92]     *Sanders*, 211 F.3d at 716 (citing *White*, 972 F.2d at 19).

permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas."[93]  Because of the "give-and-take of plea bargaining," a prosecutor's conduct does not create a presumption of retaliation or punishment "so long as the accused is free to accept or reject the prosecution's offer."[94]  Thus, prosecutorial tactics that "no more than openly present[] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he [is] plainly subject to prosecution, [do] not violate the Due Process Clause of the Fourteenth Amendment."[95]

## IV.   DISCUSSION

### A.   Failure to Exhaust

The State correctly observes that Curnen's speedy trial claim is unexhausted.[96]  When Curnen first raised his speedy trial claim in his motion to vacate the judgment pursuant to section 440.10 of the CPL, he presented his claim solely under New York's speedy trial statute, section 30.30 of the CPL.[97]  Federal

---

[93]    *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (citations and quotation marks omitted).

[94]    *Id.* at 363.

[95]    *Id.* at 365.

[96]    *See* Opp. Mem. at 24-25.

[97]    *See* Motion to Vacate ¶¶ 1-12.

courts in New York have uniformly held that raising a statutory speedy trial claim in state court under CPL section 30.30 does not sufficiently apprise the state court of a constitutional speedy trial claim.[98]  Section 30.30 "addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense."[99]  Thus, Curnen failed to properly apprise the New York courts of his claim that he was denied his right to a speedy trial under the United States Constitution.

The record also reveals that Curnen failed to properly raise his three remaining habeas claims in the state courts.  Curnen's motion to vacate the judgment did not clearly state that he was raising any claims in addition to his speedy trial claim.  Curnen only made passing reference to vindictive prosecution and prosecutorial misconduct in his motion.  Moreover, the facts underlying those two claims are virtually indistinguishable from the facts underlying Curnen's speedy trial claim: namely, that the prosecutors caused "excessive delay in the form of multiple and unnecessary adjournments" by refusing to grant Curnen's request for a jury trial on his initial misdemeanor charge.[100]  Curnen's motion cited no legal authority in support of his claims for vindictive prosecution and

---

[98]     *See, e.g.*, *Newborn v. Smith*, No. 09 Civ. 4844, 2013 WL 504391, at *4 (E.D.N.Y. Feb. 7, 2013) (applying New York law).

[99]     *People v. Anderson*, 66 N.Y.2d 529, 535 (1985) (citations omitted).

[100]    *See* Motion to Vacate ¶ 14.

prosecutorial misconduct.  Understandably, both the prosecutors' opposition to Curnen's motion and the trial court's decision on Curnen's motion only addressed the statutory speedy trial claim and made no mention of vindictive prosecution or prosecutorial misconduct.

Finally, Curnen for the first time raised his claim for ineffective assistance of trial counsel on appeal of the trial court's denial of his motion to vacate.  Curnen also reiterated his claims for prosecutorial misconduct and vindictive prosecution, this time explicitly invoking the Fourteenth Amendment of the United States Constitution.[101]  However, the Appellate Division denied leave to appeal and never reached the merits of any of Curnen's claims.

Curnen has consequently failed to exhaust each of his habeas claims in state court.[102]  Nonetheless, "[a]n application for a writ of habeas corpus may be

---

[101]    *See* 1/26/11 Application for Certificate Granting Leave to Appeal, Ex. K to MacCrae Decl.

[102]    Curnen's claims are not deemed exhausted for the purposes of federal habeas review.  Despite Curnen's failure to properly raise his current habeas claims in the New York courts, his claims would not be procedurally barred at the state level.  Theoretically, Curnen could still raise his current habeas claims on a second motion to vacate the judgment under CPL § 440.10.  Curnen could also move to set aside his sentence pursuant to CPL § 440.20.  Because no New York court has reached the merits of Curnen's habeas claims, and because sufficient facts do not appear on the record to have permitted adequate appellate review on direct appeal of his conviction, New York law would permit Curnen to file either motion. *See* CPL §§ 440.10(2), 440.20(2).

denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."[103]  It is therefore appropriate to consider the merits of Curnen's claims.[104]

### B.    Curnen's Claims

#### 1.    Denial of the Right to a Speedy Trial

Curnen's speedy trial claim centers on the 559-day delay between his arrest on May 3, 2007 and the prosecutors' declaration of their readiness for trial on November 12, 2008.[105]  Curnen does not object to any delay between the declaration of readiness for trial and the commencement of his trial.

None of the *Barker* factors supports Curnen's claim that he was denied the right to a speedy trial.  The Supreme Court has rejected attempts to quantify the speedy trial right "into a specified number of days or months."[106]

---

[103]    28 U.S.C. § 2254(b)(2).

[104]    *See Rhines*, 544 U.S. at 277.

[105]    *See* Pet. at 9-15.  Notably, Curnen's constitutional speedy trial claim mostly duplicates the statutory speedy trial claim that Curnen previously raised in the New York courts.  As detailed above, section 30.30 of the CPL addresses only prosecutorial readiness and does not embody the Sixth Amendment right to a speedy trial.  Nonetheless, Curnen explicitly invokes both the Sixth and the Fourteenth Amendments in the instant petition, *see id.* at 14, and the facts underlying his constitutional speedy trial claim are presumably identical to those underlying his statutory speedy trial claim.

[106]    *Barker*, 407 U.S. at 523.

-24-

Moreover, even a presumptively prejudicial length of delay is not in itself dispositive, but will only provoke an inquiry into the other factors.[107] By itself, the length of the delay to which Curnen objects – approximately eighteen months – is insufficient to support Curnen's claim that he was deprived of his right to a speedy trial.

The second *Barker* factor weighs decisively in the State's favor. The entirety of the delay to which Curnen objects occurred prior to his grand jury indictment on felony charges. There is no dispute that the adjournments during this period related almost exclusively to (1) Curnen's pre-trial motions seeking dismissal of the charges against him, (2) time for the prosecutor to reply to those motions, and (3) necessary deliberation by the local court.[108] Further, Curnen was represented by either privately retained or court-appointed counsel during the majority of this period. The Supreme Court has made clear that "delays caused by defense counsel are properly attributed to the defendant, even where counsel is assigned."[109] Thus, the entire period devoted to resolution of Curnen's pre-trial motions is attributable to him, not the State. Curnen maintains that because he

---

[107]    *See id.* at 530.

[108]    *See* Pet. at 9-11.

[109]    *Brillon*, 556 U.S. at 94.

fired his court appointed attorney in July 2008, "[t]he period from July 2008 – Novmber [sic] 2008 is chargeable to the people . . . ."[110]  Even assuming *arguendo* that this is true, only four out of the eighteen months of delay to which Curnen objects would be attributable to the State.  Further, Curnen has provided no facts that might support a contention that the prosecutors deliberately delayed trial in order to "hamper [his] defense."[111]  Curnen has thus failed to satisfy the second *Barker* factor.

The third *Barker* factor fails to tilt the balance in Curnen's favor.  The State points out that there is no factual basis, other than Curnen's allegations in his petition, to support Curnen's statement that he repeatedly asserted his constitutional right to a speedy trial.[112]  There is no record of the court proceedings prior to Curnen's felony indictment because the Patterson Justice Court is not a court of record in New York.[113]  However, Curnen does not allege that he demanded a speedy trial during any of his court proceedings, nor does he allege that he requested a jury trial in any of his pre-trial motions.  The crux of Curnen's

---

[110]   Pet. at 13.

[111]   *Barker*, 407 U.S. at 531.

[112]   *See* Opp. Mem. at 28.

[113]   *See id. See also* New York Judiciary Law § 2.

allegation is that the prosecutors refused to proceed to a jury trial on the initial misdemeanor charge after Curnen rejected their plea offers, instead charging and trying him on felony assault.[114]  Nearly all of the instances in which the prosecutors allegedly refused to grant Curnen a jury trial on the misdemeanor charge occurred during the pendency of Curnen's pre-trial motions.  In light of the surrounding circumstances, Curnen's allegations regarding his assertion of the right to a speedy trial fail to tilt the balance in his favor.[115]

Finally, Curnen has not alleged that he was prejudiced in any way by the eighteen-month delay.  Curnen was not incarcerated at any point until he was sentenced in June 2009.  Further, Curnen nowhere alleges the delay caused him anxiety or concern, much less that it impaired his defense in any way.

Curnen's claim that he was deprived of his right to a speedy trial is therefore denied.

### 2.    Ineffective Assistance of Counsel

New York law requires a defendant who claims he has been denied the right to a speedy trial pursuant to section 30.30 of the CPL to raise his claim in

---

[114]    *See* Pet. at 11-12.

[115]    *See Loud Hawk*, 474 U.S. at 314.

a motion "prior to the commencement of trial . . . ."[116]  Curnen asserts that he

"begged and pleaded with the court appointed attorney to file the motions" for

denial of his right to a speedy trial, but his counsel refused to do so.[117]  Curnen

contends that his pre-trial counsel was ineffective for failing to bring such a

motion.

       The State argues that Curnen's claim is meritless because the trial

court would have rejected a speedy trial motion even if Curnen's counsel had

timely raised it.[118]  As the State observes, nearly all of the delay to which Curnen

objects is excluded from the calculation of the statutory time period within which

the prosecution is required to be ready for trial.[119]

       Moreover, Curnen's complaint relates entirely to the People's failure

to declare their readiness for trial within ninety days of his arraignment on the

initial misdemeanor charge.  Even if Curnen had successfully moved to dismiss the

---

    [116]     CPL § 210.20(2).

    [117]     *See* Pet. at 19.

    [118]     *See* Opp. Mem. at 30. *See also* 11/3/10 Affirmation in Answer ("Opposition to Motion to Vacate"), Ex. E to MacCrae Decl.

    [119]     New York law specifically excludes the following periods from the calculation of the People's speedy trial obligations: (1) delays resulting from pre-trial motions, (2) delays resulting from a court-granted continuance with the consent of defendant or his counsel, and (3) periods in which the defendant is not represented by counsel. *See* CPL §§ 30.30(4)(a)-(f).

misdemeanor complaint on speedy trial grounds, the People still would have been able to present evidence to a grand jury in order to obtain a felony indictment for the same conduct alleged in the misdemeanor complaint.[120]  Indeed, Curnen was ultimately indicted and tried on felony assault, not the initial misdemeanor charge. Because the ultimate disposition of Curnen's criminal case would not have been altered even if Curnen had succeeded in dismissing the misdemeanor complaint, Curnen cannot show that he was prejudiced as a result his pre-trial representation.

Accordingly, Curnen's claim for ineffective assistance of counsel is denied.

### 3.    Vindictive Prosecution

Curnen alleges that the People engaged in vindictive prosecution by pursuing felony charges against him as retaliation for invoking his statutory and constitutional right to a jury trial.[121]  Curnen contends that Putnam County prosecutors essentially threatened him with felony charges when he refused to accept their plea offer on his initial misdemeanor charge.[122]

Curnen has not provided any documentary evidence to support his

---

[120]    *See People v. Wright*, 931 N.Y.S.2d 727, 729 (3d Dep't 2011); *People v. Capellan*, 833 N.Y.S.2d 20, 21 (1st Dep't 2007).

[121]    *See* Pet. at 25.

[122]    *See id.*

allegations that the prosecutors threatened him and retaliated against him.  But even assuming that all of his allegations are true, the claim still lacks merit.  The Supreme Court has considered and rejected claims of prosecutorial vindictiveness in the context of threats made during plea negotiations.  In *Bordenkircher v. Hayes*, a prosecutor followed through on a threat to bring additional charges against a defendant who refused to plead guilty to the offense with which he was originally charged, thereby increasing the defendant's punishment.[123]  Because the defendant in *Bordenkircher* was "plainly subject to prosecution" on the additional charges and was "free to accept or reject the prosecution's offer," the prosecutor's tactics did not create a presumption of vindictiveness.[124]  As the Supreme Court explained, "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that the subsequent charges in the charging decision are unjustified."[125]

The holdings in *Bordenkircher* and *Goodwin* dictate the outcome in this case.  The initial decision to charge Curnen with a misdemeanor did not remove the prosecutors' option of subsequently increasing the charges to a

---

[123]    434 U.S. at 358.

[124]    *Id.* at 363, 365.

[125]    *Goodwin*, 457 U.S. at 382-83.

-30-

felony.[126]  Curnen does not dispute that he was plainly subject to felony charges for his underlying conduct.  Further, Curnen admits that he freely "refused and rejected each and every plea offer by the [P]eople."[127]  The timing of the prosecutors' decision to increase the charges against Curnen – in the midst of plea negotiations – does not raise a presumption of vindictiveness.

Curnen has failed to provide any facts that would support a presumption of vindictiveness, much less that the prosecutors harbored genuine animus toward him.  Curnen's claim for prosecutorial vindictiveness is therefore denied.

### 4.    Prosecutorial Misconduct

Curnen also alleges that Assistant District Attorney Mary Jane MacCrae is guilty of prosecutorial misconduct and "criminal acts."[128]  Specifically, Curnen asserts that MacCrae falsely represented to the New York courts that she was the prosecutor assigned to Curnen's case, even though the "true assistant

---

[126]    *See id.* at 382 ("[A prosecutor's] initial decision should not freeze future conduct.  As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.").

[127]    Pet. at 23.

[128]    *Id.* at 30.

district attorney assigned" to his case was Gregory Folchetti.[129]  Curnen alleges that

MacCrae made these false representations in briefs that she submitted to the

Putnam County Supreme Court and the Appellate Division, Second Department in

connection with Curnen's motion to vacate his judgment.  According to Curnen, it

was "legally impossible" for MacCrae to oppose the claims raised in his motion to

vacate because she was not fully familiar with the facts of the case.[130]

   As a purely factual matter, Curnen's prosecutorial misconduct claim is

baseless.  Curnen  admits that MacCrae became involved in the case while it was

being transferred from the Patterson Justice Court to the Putnam County Court.[131]

Although Folchetti initially handled the case while it was pending in the Patterson

Justice Court, MacCrae was solely responsible for handling Curnen's prosecution

in the Putnam County Court.[132]  Curnen's allegation that MacCrae made

misrepresentations in her opposition briefs is therefore completely unsubstantiated.

MacCrae stated (1) that she was "the prosecutor assigned to the above-captioned

matter," and (2) that the source of her information in opposing Curnen's motion

---

[129]  *Id.*

[130]  *Id.* at 31.

[131]  *See id.* at 30.

[132]  *See* Opp. Mem. at 32.

was "the file of the matter maintained by the Office of the District Attorney of Putnam County."[133]  Both of those statements were honest and accurate representations of MacCrae's involvement in Curnen's case.

Curnen's prosecutorial misconduct claim is therefore denied.

## V.    CONCLUSION

For the foregoing reasons, the Petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[134]  A "substantial showing" does not require a petitioner to show that he would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether] the issues presented were 'adequate to deserve encouragement to proceed further.'"[135]  Petitioner has made no showing.  Thus, I decline to grant a COA.  The Clerk of the Court is directed to close this Petition and this case.

---

[133]    Opposition to Motion to Vacate at 1.

[134]    28 U.S.C. § 2253(c)(2).

[135]    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              June 19, 2015

**-Appearances-**

**Petitioner (Pro Se):**

Jason Curnen
2741 South Seamons Neck Road
Seaford, NY 11783

**For Respondent:**

Heather Marie Abissi
Assistant District Attorney, Puntam County
40 Gleneida Avenue
Carmel, NY 10512
(845) 808-1050